FILED

PAID

SEP 13 2021

Clerk, US District Court
COURT 4612

2021 SEP 13 PM 2:55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

Yehoram Uziel
19329 Bryant St.
Northridge, California 91324
Telephone: (818) 885-2588
Email: Yehoram@soligen.com

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Yehoram Uziel,
an individual in pro per

Plaintiff,

vs.

Gavin Newsom Governor of the
State of California.

Defendant.

CASE NO. :

CV21-7320-MWF(AFMx)

**COMPLAINT FOR DECLARATORY
AND INJUNCTION RELIEF**

**Filed with
Declaration of Yehoram Uziel.
Declaration of Dr. Robert Laitman.**

## I.  INTRODUCTION

1.   Plaintiff brings this action against Defendant Gavin Newsom in his official
capacity as the Governor of the State of California, on the grounds that
California Welfare and Institution Code, Division 5: Community Mental
Health Services (hereafter "WIC") enables mental health institutions within
its jurisdiction, under the color of WIC laws, to discriminate against the
families of mentally ill family members, detained by the State for
evaluation and treatment pursuant to WIC §5150. Governor Newsom has
the ultimate responsibility and authority to enact and enforce laws in
California.

2. The alleged discrimination against the families of mentally disordered persons manifests itself in systemic practicing of Deliberate Indifference Standard of Care when discharging a disabled mentally disordered person to his/ her family from involuntary detention for post trauma care.

3. California mental health institutions systemically discharge mentally disordered persons to their families in unstable mental conditions with no insight into their medical conditions or illness. Thus they can be unexpectedly dangerous to themselves, to their families and to others.

4. This standard of discharging a mentally ill person is substantially different from the standard of discharging of a non-mentally ill person to his / her family.

5. That difference in the standard of discharge is discriminatory to the family of the discharged mentally ill person because a discharge of a mentally ill person, especially a person with no insight of his / her illness creates a risk that the discharged mentally ill person will hurt himself/herself or the willing family that is trying to help his / her rehabilitation.

6. Plaintiff is the step father of a gravely disabled mentally ill daughter who for years exhibited multiple incidents of acting in danger to herself and in danger to others. These incidents resulted in frequent involuntary detentions for "evaluation and treatment" pursuant to WIC §5150.

7. Each and every involuntary hold of Plaintiff' daughter ended in the discharge of Plaintiff daughter to the family in unstable mental conditions, with no treatment to her symptoms or to her core disease in a discriminatory manner that put the entire Plaintiff family at risk.

8. In the three recent involuntary holdings, (from three different California mental health hospitals), Plaintiff' daughter was discharged to the family in unstable conditions without disclosure to the family of the admitting

psychiatrist evaluation results or record of the treatment provided prior to the discharge, or even the reason for the discharge.

9.   Said discriminatory discharges of mentally disordered family members to their families inflicts cruel and unusual punishment to the families of the mentally ill; punishment that no family deserve to endure for exercising their right to companionship with their family members. Punishment, that no parent, determined to avoid discharging their disabled mentally ill child to the streets, exposing their child to exploitation by human traffickers drag dealers and other criminals, deserves.

10.  To understand the level of discrimination and the danger to the discharged patient and his family, one should imagine a situation when a child, diagnosed with an infectious disease (like Tuberculosis, or Covid) is discharged from trauma hospitalization for post care to his family <u>without</u> disclosing to the family the medical condition of the discharged child, hiding details of the treatment provided, without any provision for aftercare to protect the discharged person from medical deterioration and to protect the parents from infection, or other injury that at times could be lethal.

11.  Under the Eight Amendment to The United States Constitution the State is required to provide "*reasonably adequate*" medical care to those it confines. Detainees in an involuntary hold at a mental health hospital are no different than prisoners. Courts have defined adequate medical care as "*services at a level reasonably commensurate with modern medical science of a quality acceptable within prudent professional standards at a level of health services reasonably designed to meet routine and emergency psychiatric care*". Adequate medical care also refers to the terms and conditions of a person at the time of discharge to post hospitalization care by his family.

12. Specifically, when a State detains pursuant to WIC §5150 mentally disordered persons for evaluation and treatment, the State should be required to provide "*reasonably adequate*" (procedural and substantive) medical care to those who are involuntarily held for the purpose of evaluation and treatment.

13. Procedural reasonably adequate care should at least include: (i) proper medical diagnosis of the admitted person; (ii) review of the admitted person pre existing conditions; (iii) devising an adequate treatment plan to handle the trauma for which the person was admitted for; (iv) perform the adequate trauma treatment; (v) test and prescribe necessary medications to handle the trauma; (vi) determine the duration of care until the patient is in sufficient stable medical condition for discharge; (vii) determine to where can the patient be discharged without unreasonable risk of adverse effect of the discharge; and (viii) document all of the above to create adequate discharge document clear to follow by the admitting party for post care.

14. Substantive reasonably adequate care requires thorough investigation of any pre existing conditions in order to assure that the treatment provided does not degrade the medical conditions of the admitted patient.

15. That standard of care (¶13,14) is customary in every medical institution except in mental health institutions in California.

16. The standard of care of mentally disordered persons detained pursuant to WIC §5150 should apply to the terms of discharging a person to his / her family. The discharge instructions from WIC §5150 hold to the family must take into account the ability of the family to care for their love one **as well as** the risks to the family caused by the terms of the discharge.

17. In Estelle v Gamble [429 U.S. 97 (1976)]:"[D]eliberate indifference to a serious medical need of a detainee constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendments". In this action ity is

important to state that the inflicted pain is not just limited to the detained family member, it include his or her caring family.

18. By accepting a discharged person to his/her family for care, the family agrees to provide its discharged mentally ill family member essential medical care, cloths food and shelter so the mentally ill child is no longer "qualified" as "gravely disable", or "dangerous" by the holding institution, thus that person can be released from the WIC §5150 involuntary hold.

19. California law (WIC §5008.2) requires that all health care institutions (or providers) SHALL take the medical information of the detained person, including preexisting conditions, and the historical treatment courses, at the time of the detention.  While WIC§5008.2 does not specifically preclude any specific source from providing the medical information, the admitting psychiatrist (or the admitting hospital staff) must take all this information into account in determining the reasonable and adequate mental care, specifically in the evaluation and treatment of the person under custody. However, CA State Laws fail to assure that such medical record, even if handed to the admitting hospital is taken into consideration in the reasonable adequate care.  CA State Laws enable the holding mental institution to hide certain medical data from the family prior to discharging the detainee, to their family.

20. Furthermore, the State should be prohibited from discharging a person from an involuntary hold without detailed documentation of the substantive and procedural due process of the evaluation and the treatment, assuring the family that the medical and psychiatric care in the involuntary hold meets the criteria of "*reasonably adequate*" care.

21. A reasonably adequate psychiatric care of a person held pursuant to WIC §5150 must assure that the discharged detainee has insight to his/her medical condition at the time of the discharge; so he/ she is not in danger to

himself/herself or to others; a reasonable adequate care should never allow a hospital to discharge any person from involuntary hold in gravely ill conditions and without assuring that the discharged person has insight to their dire medical conditions.

22. Plaintiff Yehoram Uziel is the stepfather of Christony Chartburut, (hereafter "Christony") who suffers from acute schizophrenia, with no insight into her illness (Anosognosia) [*see attached Declarations of Yehoram Uziel and Dr. Robert Laitman MD*].

23. Anosognosia is a neurological condition that interferes with a person' ability to recognize his/her illness. Persons with Anosognosia often refuse to take medications including life saving medications essential for them to minimally function.

24. Over the years, at times when Christony took her prescribed psychotic medications regularly, these medications helped Christony to function without severe symptoms of being dysfunctional. These medications for the last eight years kept Christony from suicide attempts. However, psychotic medications often have side effects and their consumption have to be monitored by a physician. Thus when "anosognostic" mentally disabled persons disrupt their psychotic medication consumption that worsen the side effects on the mentally disordered person including hallucinations enough to make them danger to themselves and to others around them.

25. At times when Christony' hallucinations increased, her hallucinations caused her to believe that she was "cured"; consequently she developed beliefs that she no longer need to take medications even those medications that are necessary for her to minimally function.

26. Any disruption or discontinuation of Christony' regular intake of psychotic medications resulted in severe degradation in her behavior; degradation that causes her to become increasingly danger to herself (suicidal) and to others

(violant). Christony gradually lost her ability to earn a living, or take care of her basic needs for hygiene, food cloths or shelter.

27. In the last 7-8 years Christony was involuntarily hospitalized for evaluation and intensive treatment pursuant to WIC §§5150, 5250 or 5270 at different mental health institutions in Southern California for involuntary holding periods varying from 72 hours to five (5) weeks.

28. In the last few months (April to July 2021) Christony increasingly became danger to herself and others. On or about June 2021 Christony, at that time working as a ride share driver, was involved in multiple traffic accidents, a hit and run attempt and a high speed chase with LAPD - a violation of §VC2800 2(a) commonly known as recklessly evading a peace officer.

29. Following that high speed chase, LAPD jailed Christony at LA County jail for 5 days before she was released (at 1:00 AM) to the street to call her mother for help. LAPD released Christony without bail, with a verbal notice (which she denies) to face an arraignment for felony criminal charges of recklessly evading a police officer.  She refused to appear for arraignment and the district attorney sent a letter to Plaintiff that a warrant for her arrest was issued.

30. Plaintiff family has been presented with Christony at that night with no advanced notice, released by LAPD in a gravely ill condition, hallucinating as she was never involved in any altercation with police, or others, detained or treated by the State. In her mind the 5 days in jail was a "police mistake", and she has been convinced that she "took care" of any car accidents by "proving" to the police that all accidents were faults of others.

31. On the following day to her discharge from LA County jail (6/6/2021) Christony was taken into a §5150 involuntary hold at Olive View Medical Center by LA county department of mental health personnel.

32. As in each of Christony' past involuntary holds, under the color of medical privacy laws, the holding institutions refused to acknowledge (deny or confirm) that Christony has been in their custody; either at the day that she was taken into custody or thereafter.

33. Plaintiff applied tremendous pressure to make contact with the holding facility, including appearing unsolicited at the holding facility (during published visitation hours) to obtain confirmation where Christony was hospitalized at that holding facility. The medical staff refused to disclose to Plaintiff' family any information on or about Christony' medical conditions, refused to allow Plaintiff to speak with the admitting psychiatrist, discuss the mental conditions that Christony was admitted for, her psychiatric pre – existing condition or disclose to the family any detail of the evaluation, the treatment, the medications administered or the effect of said medications on her psychiatric condition.

34. The medical staff at the hospital refused to discuss with the family when Christony might be discharged or even alert the family prior the discharge. Informally a medical staff admitted to the family the medical staff struggle to convince Christony to take medications, clear evidence to her Anosognosia.

35. In the last three involuntary holds, after continued pressure from Plaintiff, sporadically a medical staff member agreed (pursuant to WIC section 5008.2) to receive information from Plaintiff' family about Christony' medical pre existing conditions, including a request from Plaintiff" family to connect with Christony' treating physician Dr. Robert Laitman. Plaintiff" family was never assured that that medical data submitted by Plaintiff to the holding institution reached the admitting or treating psychiatrists.

36. Only one of the last three holding facilities (Olive View Medical Center) accepted a phone call from Christony' treating physician. Despite numeric

attempts made by Dr. Robert Laitman to communicate the severity of Christony pre existing conditions, his diagnosis or past treatment were never mentioned ion any discharge documents.

37.  Each and every involuntary holding in the last few years was terminated by a phone call to Plaintiff family from a holding facility by a person who identified himself as a "case manager" informing the family that Christony, was already discharged and was on her way home.

38.  In each of the past discharges, Christony has been discharged to Plaintiff home without any discharge documentation.

39.  Again and again Plaintiff family has been presented with Christony released in a gravely ill condition, hallucinating as she was never diagnosed, or treated in involuntary hold by the State.

40.  Only luck prevented the exploitation of Christony after being discharged by human traffickers or drug dealers.

41.  It has become apparent to Plaintiff that mental health' holding hospitals systematically apply Deliberate Indifference Standard of care to patients involuntarily admitted for mental disorders evaluation and treatment; discriminatory standard of care in comparison to evaluation and treatment of non mental health patients admitted to the same hospitals for severe illness or injury.

42.  Consequently, Christony has been repeatedly brought back to involuntary holdings for evaluation and treatment in a cycle of never ending acute schizophrenic episodes, detentions, and releases. Her medical condition continues to deteriorate and Plaintiff family is forced to live with a never ending anxiety waiting to the next trauma of their daughter and the potential risk of violent episodes that threat Plaintiff family livelihood.

43.  In the last few years through support groups organized via the National Alliance on Mental Illness ("NAMI"), Plaintiff and his wife heard plenty of

horror stories on revolving doors at the WIC §5150 mental holding institutions, enough to understand that this indifferent standard of care and discharge is systemic and deliberate.

44. For Plaintiff' family <u>there is no legal recourse</u> either to protect their due process rights in companionship and society with their adult daughter; or to protect themselves from their daughter mental disorder at times that she is discharged from WIC §5150 evaluation and treatment to the family in dire mental disorders.

45. Parents and Children possess a constitutionally protected liberty interest in companionship and society with each other. In *Kelson v. City of Springfield,* 767 F.2d 651 (9th Cir. 1985), the Ninth Circuit held that the state's interference with such liberty interest without due process of law is cognizable (*within the jurisdiction of the court*) under 42 U.S.C. § 1983.

46. The Ninth Circuit later clarified that a parent's right implicates both a custodial and a companionship interest, either of which, when interfered with by the state, gives rise to a cognizable Fourteenth Amendment due process claim. *City of Fontana*, 818 F.2d at 1419; *see, e.g., Strandberg v. City of Helena*, 791 F.2d 744, 748 n.1 (9th Cir. 1986) (recognizing that while parents of deceased 22-year-old son had no deprivation claim of the right to parent, they had claim for violation of their due process rights in companionship and society of their adult son). The Ninth Circuit has held that a parent's liberty interest is neither binary nor automatic, but rather becomes judicially enforceable only when the parent "demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of [the] child."

47. The Ninth Circuit also held that a claim of interference with the parent/child relationship may be brought as either a procedural due process claim or a substantive due process claim.

48. Division 5 of California Welfare and institution Code Article 4(d)(1) states: "*Non withstanding par. (1) of subdivision (h) of § 5008, a person is not "gravely disabled" if that person can survive without involuntary detention with the help of responsible family friends or others who are both willing and able; and able to help provide for the person' basic needs for food, clothing or shelter*". Implementation of this code to discharge a mentally disordered from an involuntary holding without full disclosure of the evaluation or the treatment provided at the time of the involuntary hospitalization, or the accurate medical conditions at the discharge of a person to his / her family inflicts cruel and unusual punishment to the family of the discharged person; cruel and unusual punishment to a family willing to relieve the hospital from its fundamental obligation to provide reasonable adequate care to patients under the holding hospital' supervision and care.

49. It is inconceivable for any California citizen to discover that California Law coerces families of mentally disordered individuals to accept their mentally ill family member at dire conditions only to relieve the holding hospital of its duty to provide detainees with a *reasonably adequate* care, and the holding hospital' obligation to avoid recklessly and irresponsibly discharge of a mentally disordered person involuntary held untreated.

50. California WIC laws establish that mental health institutions are permitted, even encouraged, to deliver such discriminatory Deliberate Indifference Standard of care and discharge to the mentally ill admitted pursuant to WIC§5150 for evaluation and treatment.

## II.   **JURISDICTION AND VENUE**

51. Plaintiff brings this lawsuit pursuant to 42 USC §1983 for the violation of his rights secured by the Fourteenth Amendments of the US Constitution.

52. Families of severely sick or injured people discharged from a hospital unable to resume their normal capacity, are, when able often an alternative to rehabilitation institutions. These families are singled out as a protected class of citizens, some able to help rehabilitate their love ones, others not. Discharge from any health care institution to a family care requires, by statute, the discharging hospital to verify that the family accepting a discharged patient is capable and willing to provide the essential care to their love one.

53. The State of California Laws discriminates against the families of disabled mentally ill persons who are a part of a protected class. Plaintiff, as a parent of a mentally ill daughter is therefore, like many other families accepting their children for post hospitalization care is deprived by the State of California of substantive due process of law each time when his daughter is discharged from an involuntary hospitalization to his home without disclosure documents of her psychiatric conditions.

54. Jurisdiction over claims for declaratory and injunctive relief is proper under USC §§ 1331 (federal question), 1343 (civil rights) and 2201-2202 (Declaratory Judgment Act).

55. Venue is proper in this Court under 28 USC § 1391(b) on the ground that all or a substantial part of the acts occurred in the State of California giving rise to Plaintiff' claims occurred in the Central District of California.

### III. **THE PARTIES,**

Plaintiff

56. Plaintiff Yehoram Uziel (hereafter "Uziel" or "Plaintiff) is a self represented individual who in the last 13 years has been the life partner of Christony Chartburut' mother, Christine Chartburut Stevens. For the most of this period Christine Stevens and her daughter Christony resided at Uziel

residence at 19329 Bryant Street in Northridge California. Yehoram Uziel is the step father of Christony Chartburut.

Defendants

57. Defendant Mr. Gavin Newsom is the Governor of the State of California. Mr. Newsom is being sued in his official capacity of California State Governor. Mr. Newsom has the authority and the ultimate responsibility to ratify and enforce the laws and regulations of the State of California complained in this action (at the California Department of Health Care Services (DHCS)); and enforce compliance at all State owned, or contracted by the State, health care providers.

## IV.  **DECLARATORY RELIEF ALLEGATIONS**

58. Plaintiff realleges paragraphs 1 through 57 above and incorporates the same as though set forth herein.

59. Plaintiff alleges that Defendant' Laws and Regulations (Welfare and Institution Codes) that relate to involuntary holding of a mentally disordered person (WIC §5150, and its derivatives §5250, §5270 for extension of holds) empower mental health hospitals to apply a discriminatory Deliberate Indifference Standard of Evaluation, Treatment and Discharge to the family of a mentally disordered individuals (like Plaintiff' daughter Christony).

60. Said discriminatory Deliberate Indifferent Standard of care manifests itself by intentionally ignoring the preexisting conditions of the involuntary held family member (Christony), maliciously taking advantage of her illness (Schizophrenia), her inability to have insight into her illness (Anosognosia), to discharge her from that involuntary §5150 holding to the family for post trauma care in a condition that risks her and her family ability to live safely.

61. Plaintiff alleges that California WIC State laws violate Plaintiff' civil rights

12

granted by the US Constitution.

62.  Under the Fourteen Amendment to the United States Constitution Plaintiff has a right to be free from laws that limit or deprive Plaintiff' right to companionship with his family.

63.  Under the Fourteen Amendment to the United States Constitution Plaintiff has a right to be free from laws that deprive him from housing or providing care for his gravely ill family member.

64.  Under the Fourteen Amendment to the United States Constitution Plaintiff has a right to be free from laws that wave any hospital obligation to execute procedural or substantive due process of law in the process of discharging a gravely ill person to his family household.

65.  Under the Fourteen Amendment to the United States Constitution Plaintiff has a right to be free from laws that coerce or require Plaintiff to refuse caring for his daughter in order to maintain his daughter' gravely ill status pursuant to WIC§5250.

66.  Thus, Plaintiff seeks protective relief for his family in the form of a Court declaration and order for injunction relief that the current California Welfare and Institutions State Laws and their derived procedures, that allow health care institutions to release patients from involuntary hospitalization in unstable conditions; without full disclosure of the care provided and psychiatric mental conditions are invalid, unenforceable, and void; a and preliminary and permanent injunctions against any enforcement of the challenged State law provisions.

67.  Injunction relief is required to prevent the State of California through its Welfare and Institution Code WIC§5250 to seek to administer, enforce and otherwise implement legally unenforceable discriminatory discharge practices of mentally disordered, ill or disabled, to their family (or their friends who wish to care for them) without proper documentation or in a

state that risks the lives of the discharged mentally ill, their family or friends.

68. The State faces a heavy burden of justification when its regulations prohibit a family from maintaining an uninterrupted contact with their sick child and especially denied (for any reason) full disclosure of the evaluation and the treatment administered involuntarily prior to the discharge of their family member to their custody for post hospitalization treatment and care.

69. The State faces a heavy burden of justification of regulations that require a hospital to "protect" the privacy of a mentally disordered child from his parents; at the same time that the State seeks to discharge the child to the custody of his parents.

70. The injunction is in the public interest. Plaintiff and his wife have met over support groups of families with Schizophrenic children, organized by National Alliance on Mental Illness (NAMI) numerous parents that suffered from similar discharges of their gravely ill mentally disordered children (known for years as Schizophrenic) including incidents that the discharged children attempted suicide minutes from their arrival from the involuntary WIC§5250 hold, others within days made psychotic attempts to harm or even kill their parents.

71. Plaintiff will continue to suffer irreparable injury from the acts, policies and practices of Defendant set forth herein unless enjoined by this Court.

## V.   BASIS FOR EQUITABLE RELIEF

72. Plaintiff has no plain, adequate or complete remedy at law to redress the discriminatory wrongs addressed herein, and this suit for declaratory and injunction relief is the only means of securing adequate redress from the unlawful practices of the state of California authorized and supervised by Defendant the Governor of the State of California.

# VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a.   Declare that the State of California Welfare and Institution Code Division 5 laws and policies that govern involuntary hold of mentally disordered individuals under WIC §5150 violate Plaintiff's civil rights under the Fourteenth Amendment to the United States Constitution.

e.   Declare that no mental health institution shall, can or may refuse, evade or limit disclosure of any medical record or medical information of a mentally disordered person, detained under WIC§ 5150 (or its subsections for longer hold periods) to the person' family or to a treating physician retained by the family of the involuntary held person.

f.   Declare that a mentally ill person involuntary held under WIC §5150 has no right to medical record privacy from his family who agree to a discharge to their custody for post trauma care; or from his previous treating physicians; or from any facility that agrees to provide temporary or permanent adequate care to the mentally ill.

g.   Permanently enjoin all the mental health hospitals in California, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from continuing the practice of discharging patients, admitted for involuntary hospitalization under WIC §5150 without proper and complete discharge documentation.

h.   Order that discharged documentation of a patient to his family care should at a minimum outline:

(i)   a detailed description of the medical conditions of the detainee at the time of admission, signed by the admitting physician;

(ii)   detailed review of the person pre-existing conditions, signed by the admitting physician (including without limitation to documents obtained from the family or the prior patient' treating physicians);

(iii)   a detailed description of the treatment provided at the hospital, the administration of medications with reference to the medical (psychiatric) pre existing conditions;

(iv)   the discharging physician decision to discharge, including but not limited to prescribing post hospitalization mandatory care of the discharged, signed by the discharging physician.

i.   Further enjoin and require Defendants to provide adequate treatment to such chronic detainees and residents of mental holding facilities, including, if necessary, by extending the period of involuntary treatment, in order to mitigate the future risk of an endless cycle of ineffective, recurring involuntary detentions and treatments.

j.   Order Defendant to establish appropriate psychiatric authority to review the discharge of involuntary held person to assure that said discharged is not in danger to himself / herself or others. That the discharged person is no longer gravely ill, and a discharge that will enforce certain medications over any objections, including, but not limited to, assigning a conservator to a mentally disordered chronic person with powers to enforce medications over the patient' objections.

g.   Award to Plaintiff his reasonable attorneys' fees, costs, and expenses of litigation; and

h.   Order such other relief as the Court may deem just and proper.

DATED: August 31, 2021

By:

Yehoram Uziel
Plaintiff in pro per

16
COMPLAINT FOR DECLARATORY AND INJUNCTION RELIEF

# UNITED STATES DISTRICT COUT
# CENTRAL DISTRICT OF CALIFORNIA

### Form 8. Certificate of Compliance for Briefs

**Case Number:** _____

I am the attorney or self-represented party.

**This brief contains 4637 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x ] complies with the word limit of Cir. R. 32-1.


**Signature** _____ s/ Yehoram Uziel _____ **Date:** September 3, 2021
*(use "s/[typed name]" to sign electronically-filed documents)*

COMPLAINT FOR DECLARATORY AND INJUNCTION RELIEF

# DECLARATION OF YEHORAM UZIEL

I, Yehoram Uziel, declare:

1. I am self represented Plaintiff on the matter of Uziel V Gov Newsom District Court Case No. 2:21-cv-0000. I hereby certify that all the facts, contentions and information in the statements set forth herein are true and correct and have evidentiary support. The allegations in Uziel v Gov. Newsom are warranted by existing law; statements made in this Complaint, including the facts and the information in these statements are personally known to me; and that no statement is presented thereon for improper purpose and, if called I would and could testify under oath thereto.

2. I am the step father of Christony Chartburut; I have personally saved her from attempts to suicide.

3. As her clinical conditioned deteriorated I have tried unsuccessfully to prevented her from operating a motor vehicles under psychotic conditions.

4. For years Christony resisted to voluntarily see psychiatrists, and steadily take medications.

5. Her prior psychiatrists refused to confer with the family without explicit permission from Christony, permission that sometimes was granted and many more times refused.

6. On or about December 2020, Christine, through support groups of NAMI heard about Dr. Robert Laitman who focuses on treating schizophrenic patients and their parents.

7. Initially Christony agreed to see Dr. Laitman and take more advanced psychiatric medications (that Dr. Laitman specializes in with great success of treating schizophrenic patients, including his own son).

8. However soon after we learned that Christony suffers from severe Schizophrenia and Anosognosia (see declaration of Dr. Laitman), and the medications had a very positive effect on Christony, she decided that she was cured and reduced taking the medications.

9. Dr. Laitman warned me that Christony should not be allowed to drive and I unsuccessfully attempted to have the DMV suspend her driver license or convince the renters to not rent or insure Christony.

10. On 05-28-2021 Christony was arrested by LAPD on Highland and santa Monica bl following a violation of 2800.3VC a felony violation known as Recklessly evading a peace officer and causing injury. A $100,000 was set. On 6/4/2021 Christony was released at 1:00 am in universal studio hotel from she called her mother to pick her up.

11. Immediately we drove to Hilton Universal and found Christony in a deep mental disorder hallucinating. On the next day we called Dr. Laitman but Christony refused to talk to him.

12. On 6/6/2021 Christony was taken by ACCESS (County mental health mobile unit) to Olive View Medical Center for a §5150 involuntary hold for evaluation and treatment.

13. When we called Olive View they refused to confirm or deny that Christony was under custody and thereby allow the family to connect with the admitting physician.

14. We asked Dr. Laitman to call the admitting psychiatrist at Olive View Medical Center Dr. Fitzgerald, after which we were let to believe that Olive View Medical will not discharge Christony in unstable condition.

15. However on 6/7/2021 at 7pm Olive View Medical Center transferred Christony to College Medical Center with no documentation and the admitting psychiatrist Dr. Mangasep or any one at College Medical staff refused to speak with either Dr. Laitman or Plaintiff Uziel.

16. At this time I asked Dr. Laitman to write a letter to the College Medical Center, outline the Medical history of Christony and send it to me.

17. I took Dr. Laitman' letter and on the following day jumped over the fence of College Medical Center, waited until the security guard left its post; and as soon as someone opened the door I entered to the hospital, and walked into the security office the security manager to call Mr. Chris Boyd the psychiatric RN Manager. When Chris Boyd arrived I identified myself and handed Dr. Laitman letter (that included Christony pre existing conditions, the medications that worked and those that did not work) stating that according to WIC 5008.2 the hospital must recieve information about patients in their custody. I gave RN Boyd Dr. Laitman email address and phone numbers and asked RN Chris Boyd not to discharge Christony without discussing post discharge care with Dr. Laitman or the family.

18. Despite Mr. Boyd promise on the following day we received a call from College Medical informing us that Christony was put on an Uber car with instructions to bring her to our home.

19. Christony arrived at home in a worse condition than the conditions that sent her to Olive View medical.

20. On 7/1/2021 at 19:50 Los Angeles Department of mental Health ACCESS team came to take Christony back to a §5150 hold and Christony attempted to walk away from the ACCESS team. LAPD was called and Christony was transferred to Mission Community Center.

21. As in prior detentions, the receptionist refused to confirm or deny that Christony is at their custody.

22. The following day I went to the hospital and was allowed to go to the mental health department at the public visitation hours.

23. When the nurse came out she confirmed that Christony was there, described her conditioned as non responsive, but agreed to take a copy of Dr. Laitman letter, identified the admitting psychiatrist as Dr. Irele.

24. As in prior cases both Dr. Laitman and I attempted to contact Dr. Irele or leave messages for her with no reply or response.

25. Christony was given a tranquilizer and put on a bus to home.

26. Again she arrived at home with no documentation or prescription medications with a referral to Olive View Urgent Care for unspecified follow up.

I declare under penalty of perjury that the foregoing is true and correct

Executed on September 10, 2021 at Northridge California.


By:     Yehoram Uziel
        Plaintiff in pro per

COMPLAINT FOR DECLARATORY AND INJUNCTION RELIEF

# DECLARATION OF DR. ROBERT LAITMAN

I, Dr. Robert Laitman, MD, declare:

1. I am the treating physician of Christony Chartburut. My declaration is made as a material witness in support of Uziel claims on the matter of Uziel V Gavin Newsom

2. I hereby certify, that all the facts, contentions, information and statements set forth herein are true, correct and have evidentiary support; said facts, information and statements are personally known to me; I certify that no statement is presented for improper purpose and, if called I would and could testify under oath thereto.

3. Christony has been under my care for about 9 months.

4. Christony has dense Anosognosia, she is actively psychotic in that she no longer does self care. Christony has paranoia centered mostly on her mother (Christine) and else.

5. She needs to be treated for her schizoaffective schizophrenia.

6. Christony has markedly deteriorated over the last year and needs a robust treatment plan to stabilize her and to prevent a complete collapse of her mental health.

7. Christony inconsistent medication treatment results in severe mood swings that affect her recognition of her illness. She undergoes cycles of unexplainable hysterical episodes of laughing and crying. She will not take medications willingly; she needs residential treatment that will assure that she takes her medications as prescribed.

8. Christony is gravely ill, and in need for legal guardianship to prevent episodes of imminent danger.

9. On 6/7/2021 I have spoken with Dr. Iljie Fitzgerald at Olive View Medical Center (UCLA Health ER) and have given Dr. Fitzgerald the entire medical history of Christony.

10. On 6/8/2021 I was notified by Mr. Uziel that Christony was admitted to College Medical Center Long Beach California by Dr. Mangasep. Called Collage Medical Staff and they will not talk to me b/o "HIPPA"

11. Called College Medical and left messages with case manager RN Chris Boyd. No one from College Medical returned my calls.

12. Christony is desperately ill and we are actively killing her by not providing care to prevent her from dying.

13. This is criminal and she needs care ASAP.

I declare under penalty of perjury that the foregoing is true and correct

Executed on August 30, 2021 at Mount Kisco New York.

By:     Robert Laitman MD.

# UNITED STATES DISTRICT COUT
# CENTRAL DISTRICT OF CALIFORNIA

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*

http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**Case Number:**_____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I hereby certify that on August 30, 2021, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM\ECF system.

I certify that all participants in the case are Registered CM\ECF users and that service will be accomplished by the appellate CM\ECF system.

**Description of Document(s)** *(required for all documents)*:

## APPELLANT'S INFORMAL PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

**Signature** _____ s/ Yehoram Uziel___ **Date** __August  27, 2021_____
*(use "s/[typed name]" to sign electronically-filed documents)*

---
24

COMPLAINT FOR DECLARATORY AND INJUNCTION RELIEF